E-FILED
Tuesday, 27 July, 2021  12:37:08 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CORY GREGORY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 21-4039 |
| | ) | |
| ROCK ISLAND COUNTY JAIL, et.al., | ) | |
| Defendants. | ) | |

MERIT REVIEW ORDER

JAMES E. SHADID, U.S. District Judge:

This cause is before the Court for merit review of the Plaintiff's claims.  Shortly after Plaintiff filed her initial complaint, she submitted a second proposed complaint which was filed as a Motion for Leave to Amend. [3].  The motion is granted pursuant to Federal Rule of Civil Procedure 15. [3].

The Court is required by 28 U.S.C. §1915A to "screen" the Plaintiff's amended complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted.  A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

Plaintiff says she is a transgender woman currently incarcerated at the Rock Island County Jail (RICJ).  Plaintiff clarifies she is a convicted prisoner who was sentenced to the Illinois Department of Corrections (IDOC), but she is at RICJ awaiting a resentencing hearing. (Amd. Comp., p. 3, 4). Her amended complaint identifies eight

Defendants including the jail, Sheriff Gerald Bustos, Captain Lape, Lieutenant Browne, and Officers Roark, O'Melia, Rollins, and John Doe.

The Court first notes Plaintiff cannot sue the RIJC because it is a building and not a person or policymaking unit of government which can be sued pursuant to 42 U.S.C. §1983. *See Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) (jail is not a suable entity). Therefore, the Court will dismiss Defendant Rock Island County Jail.

Plaintiff says she was diagnosed with gender dysphoria in May of 2019. Plaintiff was transferred from IDOC to the jail on November 13, 2020 and she immediately informed staff of her transgender status as well as her current hormone replacement therapy. Plaintiff also asked to be housed in a female cell block.

Plaintiff was initially housed in a COVID-19 quarantine cell in a men's cell block and an officer advised Plaintiff if she made an issue of her transgender status, the jail practice would be to place the Plaintiff in isolation.

On November 20, 2020, Plaintiff stopped a nurse to ask for her medications, but Defendant Officer Roark interrupted and advised Plaintiff she would receive no special treatment and would instead "be treated like all the 'other male inmates.'" (Comp, p. 5). The Defendant then verbally taunted Plaintiff.

The only direct reference in the amended complaint to hormone replacement therapy is on November 25, 2020. Plaintiff says she was denied the medications resulting in severe cramps, nausea and vomiting.  Plaintiff requested medical assistance, but she was denied.  Plaintiff does not say who denied her care or if she asked for additional medical care.  She also does not clearly indicate if this was an

ongoing problem. More important, she does not identify a denial of hormone replacement therapy as an intended claim in her list of "counts." (Amd. Comp., p. 14-22, Counts I- IX).

Plaintiff was moved to a medical watch cell on November 21, 2020. On November 23, 2020, Defendant O'Melia threatened to make Plaintiff's life a "living hell." (Amd. Comp, p. 6). Plaintiff says the officer banged on her cell door and made derogatory comments during his rounds. Plaintiff says she filed "numerous requests" to move to a different cell, but Plaintiff also admits she was moved to a different area the very next day. (Amd. Comp., p. 6).

On November 24, 2020, Plaintiff moved to fourth floor segregation cell. Plaintiff says she had not received a disciplinary ticket, nor had she broken any jail rules. Nonetheless, she was subjected to segregation restrictions including limited out of cell time, limited social access, limited commissary, and limited phone time. Plaintiff further claims jail staff continued to harass her.

Plaintiff also complains about the isolation she experienced, but at times her claims are contradictory. For instance, Plaintiff states she was "the only inmate in this unit, having no human contact" and the complete isolation impacted her mental health. (Amd. Comp., p. 7). However, Plaintiff also says she faced "constant sexual harassment" from inmates as well as correctional staff and was "in constant fear for her safety." (Amd. Comp., p. 8). While not explicitly clear, it appears Plaintiff was isolated from other inmates, but occasionally did have concerning contacts with other inmates.

For instance, medical watch inmates used the showers on her living unit on November 29, 2020.  The inmates called her derogatory names and one inmate stood naked in Plaintiff's door and "masturbated for over 20 minutes, expressing the sexual things he wished to do to Plaintiff." (Amd. Comp, p. 8).  Plaintiff says Officer John Doe observed the incident, but he did not intervene.

Plaintiff also says she used the gym one time and male inmates in a nearby block called her various names including "faggot." (Amd. Comp., p. 7).  The only other "out of cell time" was to "shower and clean her area." (Amd. Comp., p. 7).  On December 9, 2020, Plaintiff informed Defendant Officer Rollins she wanted to shower, but the Defendant laughed and told Plaintiff she could only shower if she "sucked his dick." (Amd. Comp., p. 8).

Plaintiff made several requests to be moved out of segregation and into a female housing unit, but her requests were denied. Defendant Lape told Plaintiff she could not be housed with female inmates because she had not undergone Gender Reassignment Surgery.  Therefore, Plaintiff says she has remained in "complete isolation." (Amd. Comp., p. 9).

Plaintiff alleges this segregated isolation confinement is the jail administrator's policy and practice for addressing transgender inmates.  Plaintiff further states there is no legitimate penological purpose for her placement.  Plaintiff maintains her only appropriate housing placement is with female inmates.

Plaintiff further argues the Defendants are fully aware her segregated confinement is harmful to her mental health status.  In support of this contention,

Plaintiff points in part to the Defendants' failure to comply with the polices of the

Prison Rape Elimination Act (PREA).  For clarification, prisoners cannot sue under the

PREA because there is no private right of action. *See Winners v. Hyatt*, 2021 WL 1165140,

at *2 (N.D.Ind. March 25, 2021). In addition, "prison staff's failure to follow internal

policies pertaining to PREA reports does not state a claim." *Id. citing Scott v. Edinburg*,

346 F.3d 752, 760 (7th Cir. 2003).

Nonetheless, Plaintiff also states she was at greater risk to suffer mental health

issues in isolation because she suffers from bipolar disorder and anxiety.  Plaintiff notes

this information is in her medical records which were sent to the jail.  Defendants

Bustos and Lape continued to deny numerous requests for any mental health care or

treatment for gender dysphoria.  (Amd. Comp., p.12, 13).  Plaintiff does not name any

medical staff, but instead she claims these two administrators have final say over any

medical care provided.

Based on the facts alleged, Plaintiff has identified nine separate counts. (Amd.

Comp., p. 14-22).  The first three counts allege official capacity claims based on a

violation of Plaintiff's Fourteenth Amendment rights.

Count I alleges Defendants Bustos and Lape violated Plaintiff's equal protection

rights in their official capacities when they refused to place Plaintiff in a women's unit,

"discriminating against Plaintiff on the basis of her gender identity." (Amd. Comp, p.

14-15).

Count II alleges Defendants Lape and Bustos violated Plaintiff's equal protection rights in their official capacities because they have allowed Plaintiff to be "continually subjected" to verbal harassment based on her gender identity. (Amd. Comp., p. 15).

Count III again alleges Defendants Lape and Bustos violated Plaintiff's equal protection rights in their official capacities by subjecting Plaintiff to isolation based on her gender identity.

The Court also notes Count VIII further alleges an official capacity or "Monell Claim" against Defendants Bustos and Lape based on an unlawful policy or practice of improperly housing transgender inmates, allowing constant harassment, and failing to properly train staff.

For clarification, an official capacity claim against the Rock Island County Sheriff is effectively a suit against the County. *See Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1071 (7th Cir. 2012) *citing Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A local government entity such as the county is liable for damages only if a plaintiff can show an alleged constitutional deprivation occurred as a result of an official policy, custom, or practice. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Suing the Sheriff in his official capacity is sufficient to state a claim, but suing additional Rock Island County employees in their official capacities is unnecessarily redundant. *See Robinson v. Sappington*, 351 F.3d 317, 340 (7th Cir. 2003).

Consequently, Plaintiff has adequately alleged three claims against Defendant Sheriff Bustos in his official capacity in Counts I, II, III, and VII based on the alleged facts. Plaintiff claims Defendant Bustos violated Plaintiff's equal protection rights based

on: 1) a policy and practice of placing transgender inmates in segregated confinement;

2) a policy and practice of allowing officers and inmates to sexually harass transgender

inmates; and 3) a failure to properly train staff to supervise transgender inmates.

Plaintiff's Count IV is against all Defendants in their individual capacities and is

somewhat difficult to interpret.  However, Plaintiff says the Defendants each failed to

protect her from a "known and substantial risk of serious harm." (Amd. Comp., p. 16).

To state a claim, Plaintiff must allege she is "incarcerated under conditions posing a

substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second,

Plaintiff must show Defendants acted with deliberate indifference to that risk. *Id.* at 838-

39.  "[T]he official must both be aware of facts from which the inference could be drawn

that a substantial risk or serious harm exists, and he must also draw the

inference." *Id.* at 837, 114 S.Ct. 1970.

"A prisoner may demonstrate that prison officials were aware of a specific,

impending, and substantial threat to her safety 'by showing that she complained to

prison officials about a specific threat to her safety.'" *Tay v. Dennison*, 457 F.Supp.3d 657,

684 (S.D.Ill. May 1, 2020), *quoting Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).   A plaintiff

also "can establish exposure to a significantly serious risk of harm by showing that she

belongs to an identifiable group of prisoners who are frequently singled out for violent

attack by other inmates." *Farmer,* 511 U.S. at 843.

Plaintiff has clearly alleged Defendant Officer John Doe failed to protect her from

the actions of other inmates on November 29, 2020.   Given Plaintiff the benefit of notice

pleading, she has also alleged Defendants Lape and Bustos failed to protect her when

the Defendants refused her repeated requests to transfer.   However, Plaintiff has not clearly articulated claims against the remaining Defendants.

For instance, while Plaintiff maintains the individual officers harassed her or made degrading or threatening comments, she does not specifically allege those officers failed to protect her from harm from others.  In addition, it is not clear any of the individual officers had the authority to move Plaintiff to a different housing unit. Finally, Plaintiff has not clearly articulated any claims against Defendant Lieutenant Browne.  While Plaintiff says she repeatedly asked to speak with the Defendant, she also states her requests were denied. *See Wilson v. Warren Cty., Illinois*, 2016 WL 3878215, at *3 (7th Cir. 2016)( plaintiff must "show that the defendants were personally responsible for the deprivation of their rights.").  Plaintiff does not claim Defendant Browne had any other involvement in her claims.

Count V alleges Defendant Lapen in his individual capacity and Defendant Bustos in his official capacity violated Plaintiff's Eighth Amendment rights by housing her in segregation and "exacerbating her serious mental health problems." (Amd. Comp., p. 18).  Plaintiff has adequately alleged the Defendants were deliberately indifferent to her serious mental health problems.  However, Plaintiff's claim is articulated against the Defendants in their individual capacities.[1]

---

[1] Plaintiff has also previously articulated an official capacity claim against Defendant Bustos based on her housing at the jail.

Count VI alleges Defendants Bustos and Lape violated Plaintiffs rights pursuant to the Americans with Disabilities Act (ADA) in their official capacities.  To articulate a claim, Plaintiff must allege: (1) she was a qualified individual with a disability; (2) she was excluded from or denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination; and (3) the exclusion, denial of benefits, or discrimination was because of his disability. *E.g., Lacy v. Cook Cty., Illinois*, 897 F.3d 847, 853 (7th Cir. 2018) (citation omitted).

While Plaintiff has alleged Defendants discriminated against her based on her gender dysphoria, it is unclear whether she has identified a disability.  For the purposes of notice pleading, the Court will allow Plaintiff to proceed with this claim against Defendant Bustos in his official capacity. *See Venson v. Gregson*, 2021 WL 673371, at *3 (S.D.Ill. Feb. 22, 2021)(based on the "unsettled state of law," *pro se* prisoner allowed to proceed with an ADA claim based on disability of gender dysphoria);  *Hampton v. Baldwin*, 2019 WL 3046332, at *1 (S.D.Ill. April 29, 2019)(*pro se* prisoner allowed to proceed with ADA claim for failure to provide reasonable accommodations for gender dysphoria disability).

Count VII alleges Defendants Lape and Bustos violated Plaintiff's due process rights in their official capacities when Plaintiff was denied a hearing before her placement in segregation.  Plaintiff has articulated a due process claim against the two Defendants but only in their individual capacities.

Count VIII was previously addressed

Count IX alleges a state law claim against all Defendants for intentional infliction of emotional distress.  To state a claim, a plaintiff must allege (1) the defendants engaged in extreme and outrageous conduct; (2) the defendants either intended to inflict severe emotional distress or knew there was a high probability that their conduct would cause severe emotional distress; and (3) the defendants' conduct in fact caused severe emotional distress. *McGreal v. Vill. Orland Park*, 850 F.3d 308, 314 (7th Cir. 2017). For the purposes of notice pleading, Plaintiff has adequately alleged a claim for intentional infliction of emotional distress against Defendants Bustos, Lape, Roark, O'Melia, Rollins, and John Doe in their individual capacities.  As previously noted, Plaintiff has not articulated any claims against the Rock Island County Jail or Lieutenant Browne.

Plaintiff has also filed a motion for appointment of counsel. [5].  Plaintiff does not have a constitutional or statutory right to the appointment of counsel in this case.  In addition, the Court cannot require an attorney to accept *pro bono* appointment in a civil case.  The most the Court can do is ask for volunteer counsel. *See Jackson v. County of McLean,* 953 F.2d 1070, 1071 (7th Cir. 1992).

In considering the motion, the Court must consider two questions.  First, "has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so." *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), *citing Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993).  Plaintiff showed at least some attempt to find counsel on her own.

Second, the Court determines "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Pruitt,* 503 F.3d at 655. Ultimately "[t]he question is not whether a lawyer would present the case more effectively than the *pro se* plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant." *Pruitt,* 503 F.3d at 655 (internal quotation omitted). Instead, the test is whether the litigant is competent to litigate his own claims. *Id.*

Plaintiff says she has a G.E.D. and does not believe she will be able to obtain the discovery necessary to litigate her claims. However, Plaintiff has adequately articulated her intended claims. In addition, once Defendants are served, the Court will hold a hearing with the parties to discuss what discovery is needed. The Court will also enter an order providing additional information to assist with discovery. Based on the current record, the Court believes Plaintiff is competent to litigate her claims. The motion is denied.[5]

IT IS THEREFORE ORDERED:

1) Pursuant to its merit review of the amended complaint under 28 U.S.C. § 1915A, the Court finds the Plaintiff alleges:

> a) Defendant Bustos violated Plaintiff's equal protection rights based on a policy and practice of placing transgender inmates in segregated confinement.
> b) Defendant Bustos violated Plaintiff's equal protection rights based a policy and practice of allowing officers and inmates to sexually harass transgender inmates.
> c) Defendant Bustos violated Plaintiff's equal protection rights based on a failure to properly train staff to supervise transgender inmates.

d) Defendants Lape, Bustos, and Officer John Doe failed to protect Plaintiff in violation of his Eighth Amendment rights.

e) Defendant Bustos violated Plaintiff's rights in his official capacity pursuant to the ADA when he failed to reasonably accommodate Plaintiff's gender dysphoria.

f) Defendants Lape and Bustos violated Plaintiff's Eighth Amendment rights when they were deliberately indifferent to Plaintiff's serious mental health issues.

g) Defendants Lape and Bustos violated Plaintiff's due process rights when he was placed in segregation without a hearing.

h) a state law claim against Defendants Bustos, Lape, Roark, O'Melia, Rollins, and John Doe for intentional infliction of emotional distress.

Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

2) This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, in order to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

3) The Court will attempt service on Defendants by mailing each Defendant a waiver of service. Defendants have 60 days from service to file an Answer. If Defendants have not filed Answers or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of

service.  After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

4) With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service.  Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5) Defendants shall file an answer within 60 days of the date the waiver is sent by the Clerk.  A motion to dismiss is not an answer.  The answer should include all defenses appropriate under the Federal Rules.  The answer and subsequent pleadings shall be to the issues and claims stated in this Order.  In general, an answer sets forth Defendants' positions.  The Court does not rule on the merits of those positions unless and until a motion is filed by Defendants.  Therefore, no response to the answer is necessary or will be considered.

6) Once counsel has appeared for a Defendant, Plaintiff need not send copies of her filings to that Defendant or to that Defendant's counsel.  Instead, the Clerk will file Plaintiff's document electronically and send a notice of electronic filing to defense counsel.  The notice of electronic filing shall constitute service on Defendants pursuant to Local Rule 5.3.  If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

7) Counsel for Defendants is hereby granted leave to depose Plaintiff at her place of confinement. Counsel for Defendants shall arrange the time for the deposition.

8) **Plaintiff shall immediately notify the Court, in writing, of any change in her mailing address and telephone number.  Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.**

9) Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' Counsel**.**

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO:**

**1) Grant Plaintiff's motion for leave to file an amended complaint, [3];**

**2)Dismiss Defendants Rock Island County Jail and Lieutenant Browne for failure to state a claim upon which relief can be granted pursuant to by 28 U.S.C. §1915A; 3) Deny Plaintiff's motion for appointment of counsel, [5];**

**4) Attempt service on Defendants pursuant to the standard procedures; 5) Set an internal court deadline 60 days from the entry of this order for the Court to check on the status of service and enter scheduling deadlines; and 6) Enter the Court's standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

ENTERED this 27th day of July, 2021.


                              s/ James E. Shadid
        _____
                        JAMES E. SHADID
                 UNITED STATES DISTRICT JUDGE